The Honorable John H. Dawson State Representative P.O. Box 336 Camden, Arkansas 71701-0336
Dear Representative Dawson:
This is in response to your request for an opinion on the following question:
 Is it legal for public institutions of higher education in this state of offer multi-year contracts to personnel in upper-level administrative or managerial positions? If it is legal, what procedure(s) must the institution offering this type of contract follow?
I have found no provision of Arkansas law specifically addressing this question. It is my opinion, however, from a review of general fiscal laws applicable to state agencies, that the answer to your question would depend upon all the facts surrounding the length, funding, and terms of the contract. In most instances, it appears that these types of contracts are not authorized by law. A conclusive response, however, would have to take all the facts into account.
I have found no provision of the "Higher Education Expenditure Restriction Act" (A.C.A. §§ 6- 63-301- to 315 (Repl. 1996)) which governs the question posed. That act, however, specifically provides that its provisions shall not supersede the provisions of other general fiscal laws, including the "General Accounting and Budgetary Procedures Law" (A.C.A. §§ 19-4-101 to 19-4-2105 (Repl. 1994)). Two provisions of that law are generally applicable to your question. Section 19-4-704 is entitled "No obligations without appropriations," and provides that:
 (a) No obligations will be paid from appropriated funds until the General Assembly shall have made an appropriation for that purpose; nor shall any state agency enter into any contract which would contemplate that payments under the contracts would be made beyond the expiration of the biennial period unless the General Assembly, prior to the expiration of the biennial period, makes an appropriation for that purpose, or in the case of multi-year contracts for commodities or services,[1] a determination in writing has been made prior to use that:
 (1) Estimated requirements cover the period of the contract and are reasonably firm and continuing; and
 (2) Such a contract would serve the best interests of the state by encouraging effective competition or otherwise promoting economies in state procurement.
 (b) In no event shall any obligations be incurred unless there are sufficient funds or an approved federal grant on hand, or estimated to become available, to meet the obligations when they become due.
[Emphasis added.]
In addition, A.C.A. § 19-4-705 provides that:
 (a) No state agency for which regular operating appropriations are made on a fiscal-year basis shall incur any obligations under the appropriations unless there are funds on hand or an approved federal grant, or estimated to become available, during the fiscal year for the payment of the obligation; nor shall any agency create any obligation in one (1) fiscal year which will make it necessary to use the revenues of the following fiscal year in order to meet the obligation except in the case of multi-year contracts for commodities or services and as provided in § 19-4-707.[2]
 (b) In the event an agency had [sic] bank funds which are not required by law to be deposited in the State Treasury, the agency shall have the authority to create additional obligations to the extent of the bank funds on hand, or which are estimated to become available during the fiscal period. However, the agency shall not create any obligations, in the aggregate, which would make the total of such obligations exceed the total of all funds available to the agency during the fiscal period, except in the case of multi-year contracts for commodities or services and as provided for in § 19-4-707.
 As a general matter, therefore, agency contracts which would require payments to be made beyond the biennium are not authorized. So, generally, are contracts made in one fiscal year which would require payment from the next fiscal year revenues. Some leeway is given for contracts supported by "bank funds" (sometimes referred to as "cash funds"). See also Arkansas Constitution, Amendment 65 and Op. Att'y Gen. 96-272.
Thus, all the facts surrounding the funding of the contract would have to be evaluated to determine its legality. Public institutions of higher education wishing to offer such contracts should consult the counsel to whom they normally look to for legal advice to determine how to structure any such contracts.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] The phrase "commodities and services" in all likelihood has reference to commodities and services as defined in the Arkansas Purchasing Law. See A.C.A. § 19-11-239 (Supp. 1995) (governing "multi-year contracts"), and 19-11-203 (defining "commodities" and "services"). The definition of the term "services" under that subchapter does not include "employment agreements." See A.C.A. § 19-11-203(23).
[2] Section 19-4-707 involves contracts for improvements.